IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**ALLIED WORLD SURPLUS LINES
INSURANCE COMPANY**,

        Plaintiff/Counter-Defendant,

v.

**PTS SURVEYING, INC**,

        Defendant/Counter-Claimant.

No. 3:19-cv-00948-MO

OPINION AND ORDER

**MOSMAN, J.**,

This case comes before me on Plaintiff Allied World Surplus Lines Insurance Company's ("Allied World") Motion for Summary Judgment [ECF 37]. On February 28, 2020, I heard oral argument on this motion and took it under advisement. Min. of Proceedings [ECF 46]. For the reasons stated below, I GRANT Allied World's motion.

### BACKGROUND

Defendant PTS Surveying, Inc. ("PTS") is a land surveying company located in Hillsboro, Oregon. Pl.'s First Mot. Summ. J. [ECF 13] at 2. In 2014, PTS was hired by Flatiron West, Inc. ("Flatiron"), a general contractor, to perform survey work in Seattle for a Washington State Department of Transportation ("WSDOT") project. *Id.* at 2-4. The project, as described by WSDOT, was to construct the "West Approach Bridge North" ("WABN"). Mot. Summ. J. [37] at 3-4. The WABN is "a 6,000 foot roadway built on 41 sets of piers, which provides the western most connection point for the 7,700 foot long SR 520 floating bridge" which spans Lake

1 - OPINION AND ORDER

Washington. *Id.* at 7; *see also* Def.'s Resp. to Mot. Summ. J. [ECF 40] at 3-4, 10 (providing PTS's description of the WABN).[1]

Flatiron is currently suing PTS in the Western District of Washington (the "Underlying Action"), alleging that PTS committed costly errors during its survey work on the WABN project. *Flatiron West, Inc. v. PTS Surveying, Inc.*, Case No. 2:19-cv-00201 (W.D. Wash Feb. 2, 2019). PTS has an insurance policy with Allied World ("the Policy") which PTS asserts provides defense and/or indemnity coverage for the claims brought against it by Flatiron in the Underlying Action. Mot. Summ. J. [37] at 1. Allied World filed this action seeking a declaration from this court that the Policy does not cover the claims brought against PTS in the Underlying Action. *Id.*

In the present motion, Allied World argues that a coverage exclusion provision in the Policy—what the parties term the "Bridge Exclusion"—precludes PTS from receiving coverage for its work on the WABN project. The Bridge Exclusion states:

> No coverage will be available under this Policy for Loss and Defense Expenses from any Claim or Disciplinary Proceeding based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged:
>
> [ . . . ]
>
> > (3) **activities or services performed in connection with** any petroleum processing, storage or transportation facility, dam, mine, or tunnel **or bridge exceeding 150 feet in length**.

Mot. Summ. J. [37] at 6 (emphasis added); Yeisley Decl. Ex. 1 [ECF 15-1] at 9.

---

[1] At the February hearing, I ordered each side to submit to the court, via email, a photograph of the WABN. Those photographs are attached to this opinion as Exhibit A (Allied World's photo) and Exhibit B (PTS's photo).

The question before this court is whether the WABN is a bridge, or, if it is not, whether PTS's work on the WABN was a service "performed in connection with" the SR 520 floating bridge.[2]

**LEGAL STANDARD**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Here, summary judgment turns on a legal question involving the proper construction and application of an insurance policy.

In Oregon, the proper construction of an insurance policy is evaluated using the interpretive framework set forth by the Oregon Supreme Court in *Hoffman Constr. Co. of Alaska v. Fred S. James & Co. of Or.*, 836 P.2d 703, 706 (Or. 1992). The goal is to "determine the intention of the parties by analyzing the policy's express terms and conditions." *Hunters Ridge Condo. Ass'n v. Sherwood Crossing, LLC*, 395 P.3d 892, 896 (Or. App. 2017) (citing *Hoffman*, 836 P.2d at 706). As to coverage exclusion provisions in insurance policies, "[t]he insurer has the burden of proof that the loss is excluded," and "any ambiguity in an exclusionary clause is strictly construed against the insurer." *Stanford v. American Guar. Life Ins. Co.*, 571 P.2d 909, 911 (Or. 1977).

**DISCUSSION**

I.  **Whether the WABN is a "bridge."**

In a typical *Hoffman* analysis, there is a dispute over the proper construction of a purportedly ambiguous contact term or phrase. Here, there does not appear to be a dispute about

---

[2]  There is no dispute that the SR 520 floating bridge is a "bridge" for purposes of the Bridge Exclusion.

what the term "bridge" means as used in the Policy. Only Allied World actually provides a definition of "bridge." PTS argues that the WABN is not a bridge but does not provide a competing definition. Allied World, citing Merriam-Webster dictionary, defines a "bridge" as "a structure carrying a pathway or roadway over a depression or obstacle (such as a river)." Mot. Summ. J. [37] at 7 (citing https://www.merriam-webster.com/dictionary/bridge). As this is the only definition provided, and it appears sensible, it is the definition I will apply.

Allied World argues that, under the provided definition, the WABN can be viewed as either a bridge in and of itself, or as a constituent part of the SR 520 floating bridge. Mot. Summ. J. [37] at 7. PTS argues that the WABN is an "elevated roadway" that provides "an onramp and approach" to the floating bridge, but that the WABN is not a bridge itself or a part of the floating bridge. Resp. [40] at 10. [3]

The unstated thrust of PTS's argument appears to be that an "elevated roadway" and a "bridge" are mutually exclusive concepts. They are not. In fact, most bridges are elevated roadways. And that certainly appears to be the case here. Whether in looking at the photographs provided by the parties, or in reading each side's description in their briefing, it is clear that the WABN is (1) a structure carrying a roadway (2) over an obstacle (here, water). PTS does not

---

[3] PTS also argues that "PTS and Allied World clearly intended that this Policy cover the Work on the WABN project." Resp. [40] at 8. As evidence, PTS cites that it provided specific information about the WABN project to its insurance broker, who worked with Flatiron to ensure PTS's insurance met the requirements for the project. *Id.* But as PTS acknowledges, we determine the intent of the parties to an insurance contract by looking at the express terms of the policy. *Hoffman*, 836 P.2d. at 706. PTS has cited no authority which would permit me to consider these other arguments in interpreting the Policy. *See also Tualatin Valley Hous. Partners v. Truck Ins. Exch.*, 144 P.3d 991, 993 (Or. App. 2006) ("In all events, interpretation of an insurance policy is a question of law that is confined to the four corners of the policy without regard to extrinsic evidence.") (citation omitted).

contest either of these two points (how could they?). Nor do they even attempt to provide a different definition of "bridge" that would not encompass the WABN.

One of the hallmarks of legal thinking is to take nothing for granted. The downside of such an approach is that it can lead to overthinking the obvious. Here, the obvious remains undisturbed. The WABN—aptly named the "West Approach Bridge North" by WSDOT—is a bridge.[4] Therefore, the Bridge Exclusion applies, and the Policy excludes coverage for claims arising from PTS's work on the WABN project.

## II. Whether, in the alternative, PTS's work on the WABN was a service "performed in connection with a bridge."

I note at the outset that I agree with the argument made by PTS at oral argument that the WABN, assuming *arguendo* that it is not a bridge, does not necessarily fall under the Bridge Exclusion because it *physically* connects to the SR 520 floating bridge. In other words, the language "in connection with" does not mean or connote literal physical connection. Nevertheless, the fact that the WABN physically connects to the SR 520 floating bridge is relevant. The WABN would not exist but for its sole purpose in providing access to the SR 520 floating bridge. The SR 520 floating bridge would be inoperable but for the existence of access points such as the WABN (or a series of such connections). While this is ultimately a line-drawing exercise, work on the WABN is so closely related to and intertwined with the SR 520 floating bridge that it comfortably falls within the language of the Bridge Exclusion.

The only way to construe the Bridge Exclusion so that PTS's work on the WABN would not be considered work "performed in connection with" the floating bridge would be to interpret the phrase "[work] performed in connection with . . . a bridge" to mean work "performed *on* a

---

[4] Whether the WABN is better viewed as a bridge in and of itself or as a constituent part of the SR 520 floating bridge is immaterial.

bridge." But those two phrases mean different things; to construe them otherwise would warp the plain meaning of the Bridge Exclusion. Therefore, I hold that the Bridge Exclusion applies to PTS's work on the WABN for this reason as well.

## CONCLUSION

For the foregoing reasons, I GRANT Allied World's Motion for Summary Judgment regarding the Bridge Exclusion [37].

IT IS SO ORDERED.

DATED this 20 day of March, 2020.

*Michael W. Mosman*
MICHAEL W. MOSMAN
United States District Judge